UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALTHIRTY C. HUNTER, JR.,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, et al.,<br><br>Defendants. | CAUSE NO. 3:25-cv-701-AZ |

OPINION AND ORDER

Althirty C. Hunter, Jr., a prisoner without a lawyer, is proceeding in this case against Warden Ron Neal and Deputy Warden Dawn Buss in their personal capacity for money damages for failing to provide him with clean drinking water in violation of the Eighth Amendment of the United States Constitution's prohibition on cruel and unusual punishment. ECF 8 at 4. He further brings a claim for permanent injunctive relief against Warden Neal to ensure that inmates at ISP are provided with adequately safe drinking water. *Id.* a 3.

Hunter alleges that while he was an inmate at Indiana State Prison (ISP) prison officials knowingly failed to provide him with clean drinking water during lockdowns. ECF 8 at 1. Specifically, between March 2025 and June 2025, Hunter's cellhouse was locked down several times for periods of a few days to a few weeks at a time. *Id.* During those lockdowns, Hunter alleges that the only drinking water he had available was from the spigot in his cell, and that it was "light brown and greyish," "contain[ed] visible debris," and "smell[ed] of sewage and feces." *Id.* at 1-2. He further claims that

Warden Neal and Deputy Warden Buss knew of the problems with drinking water at ISP, instructed prison staff (but not inmates) to not drink the water, and had a water filtration system installed at the officer's station but no similar filtration for inmates. *Id.* at 2. Hunter does not attach any written grievances but alleges he submitted an "emergency grievance" on March 12, 2025, that was never responded to. ECF 25 at ¶ 32. He further claims that after he did not receive a response to his grievance, he "submitted a notice of non-response to the grievance specialist via request slip, which [he] submitted to case worker Ms. B. on March 19, 2025" which likewise was never responded to. *Id.*

The parties consented to magistrate judge jurisdiction. ECF 18. Defendants filed a motion for summary judgment, arguing Hunter did not exhaust his administrative remedies before filing this lawsuit. ECF 20. Hunter filed a response, and Defendants filed a reply. ECF 24, 26. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing summary judgment motion may not rely

merely on allegations or denials in its own unverified pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted *must* be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (emphasis added). In other words, proper exhaustion of administrative remedies is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "A purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation." *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005).

"Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "Failure to do what the [prison] requires bars, and does not just postpone, suit under § 1983." *Id.* at 1024. This "mandatory language means a court may not excuse a failure to exhaust" even under "special circumstances." *Ross v. Blake*, 578 U.S. 632, 639 (2016). This may appear harsh,

but federal courts "must honor Congress's choice" in how the statutes governing lawsuits challenging prison conditions are written. *Id.* at 640.

At the same time, "[p]rison officials may not take unfair advantage of the exhaustion requirement[.]" *Dole*, 438 F.3d at 809. A prisoner need only exhaust administrative remedies that are "actually available" to him. *Smallwood v. Williams,* 59 F.4th 306, 313 (7th Cir. 2023). For example, "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809 (quoting *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002)). "[W]hether a remedy is available to exhaust is a fact-specific inquiry." *Smallwood*, 59 F.4th at 314.

The Seventh Circuit previously laid out the procedure that courts should follow when faced with contested questions of whether administrative remedies have been sufficiently exhausted:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed

> of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). More recently, the Supreme Court held that where questions of exhaustion are "intertwined" with the underlying merits of the substantive case or claim being brought, then the question of exhaustion cannot be resolved by a judge through a *Pavey* hearing and instead must be tried before a jury. *Perttu v. Richards*, 605 U.S. 460, 467 (2025). In that regard, the Supreme Court overruled the holding of *Pavey* which allowed a judge to determine exhaustion in all instances. *Id.* The Seventh Circuit had previously recognized the tension between motions for summary judgment and resolving questions of failure to exhaust in these types of cases:

> The logic of *Pavey* is in some tension with a decision to combine the resolution of facts pertinent to exhaustion with the decision whether there are facts warranting a trial. *Pavey's* central holding is that exhaustion is not a question for the jury at trial, but instead is a preliminary issue for the court. Summary judgment, in contrast, is designed to weed out cases that must to go to a trier of fact from those that present no such issues. Separation of the exhaustion inquiry from summary judgment will thus promote clear decisionmaking.

*Wagoner v. Lemmon*, 778 F.3d 586, 591–92 (7th Cir. 2015). In other words, summary judgment can only be granted when there are no disputed material issues of fact, but whether there are disputed material facts is separate a question that the Court must separately decide, and resolution of that question can make summary judgment inappropriate. *See Perttu*, 605 U.S. 460, 469 (2025) ("PLRA exhaustion is an 'affirmative defense' subject to 'the usual practice under the Federal Rules.'") (quoting *Jones v. Bock*, 549 U.S. 199, 212 (2007)); *see also Burns v. Polk*, -- F.4th --, 2026 WL 2409723, at *5 (7th Cir.

Aug. 18, 2026) (reversing summary judgment on exhaustion issue because a "swearing contest requires an evidentiary hearing to resolve") (quoting *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014)).

With this legal foundation established, the Court will move on to address the substantive issues presented by Defendants' motion which relate solely to whether Hunter exhausted his administrative remedies.

First, the Court finds that the exhaustion issue is not factually intertwined with the underlying facts of Hunter's claims, so the question of whether Hunter exhausted his administrative remedies can be decided by the Court rather than a jury. *See Breyley v. Fuchs*, 156 F.4th 845, 849 (7th Cir. 2025) (noting that before holding an evidentiary hearing on an exhaustion dispute or resolving summary judgment, the district court should consider if the issue of exhaustion is intertwined with the merits of the inmate's claims under *Perttu*)**.** So now the Court analyzes whether based on this record it can resolve the issue on summary judgment or if factual issues require a *Pavey* hearing.

Defendants argue that they are entitled to summary judgment on exhaustion grounds because Plaintiff cannot provide sufficient proof to establish that he complied with all available avenues of the prison's administrative processes prior to filing suit. In response, Hunter claims that the grievance process was made unavailable to him because his grievance and notice of non-response were not responded to. The Court finds Defendants have the better argument and demonstrate they are entitled to summary judgment based on the undisputed evidence before the Court.

As a starting point, the record contains no documentary evidence that Plaintiff submitted any grievance sufficient to exhaust his claim in this lawsuit. According to Grievance Specialist Joshua Wallens, who reviewed Hunter's file, there were "no grievances from Plaintiff dated on or about March 12, 2025," or in the immediately following months. ECF 20-1 at ¶¶ 29-36. Nor was there any record of any attempt by Hunter to appeal any grievance or provide written notice of receiving no response to the grievance he alleges he filed. *Id.*

The fact Plaintiff filed his grievance as an "emergency grievance" does not change the result. Hunter argues that he was not required to provide any notice after not receiving a response because an emergency grievance is subject to a different set of procedures and, according to him, does not require any notification if no response is received. *See* ECF 24-1 at 5-7. While it is true that the grievance policy at ISP states that emergency grievances should be responded to within a shorter amount of time than a "regular grievance" (within one business day rather than 15), that does not obviate the written notice requirement to a Grievance Specialist in the event a prisoner believes his grievance was not responded to. In other words, how a prisoner styles his grievance does not alter the written notice requirement of the grievance process.

Judges in this District have ruled in cases affirmed on appeal, that filing an emergency grievance does not relieve a prisoner of their need to follow the "notice requirement" which is applicable to all grievances at ISP, emergency or otherwise. *Ridley v. Neal*, 2025 WL 1113401, at *2 (N.D. Ind. Apr. 14, 2025), *aff'd*, No. 25-1804, 2026 WL 1534366 (7th Cir. June 1, 2026). In other words, the "notice requirement" of the

Offender Grievance Process is a necessary step to exhaust a grievance whether a prisoner submits it as a "regular" or emergency grievance. *See Lockett v. Bonson*, 937 F.3d 1016, 1027 (7th Cir. 2019) (even accepting as true that the inmate filed a grievance, he must provide evidence he contacted the Grievance Specialist when he received no response to his grievance under Wisconsin's prison system); *Lipscomb v. Galipeau*, No. 3:22-CV-106-JD-MGG, 2023 WL 1778435, at *3 (N.D. Ind. Feb. 6, 2023) (granting summary judgment to the defendant because the inmate did not notify the Grievance Specialist after not receiving a response to his grievance).

The Court agrees with the holding in *Ridley* that inmates must provide a "notice" of non-response with a grievance specialist when they fail to receive a timely response in order to have exhausted their administrative remedies. If the "notice requirement" is read out of the process with regard to emergency grievances, "it would create a loophole by which any inmate could bypass the PLRA's exhaustion requirement merely by stating he submitted an emergency grievance and never received any receipt or response from the Grievance Specialist." *Ridley*, 2025 WL 1113401, at *3. It would therefore completely undermine "the purpose of the PLRA's exhaustion requirement, which is to give the prison notice of the problem and an opportunity to address it." *Id.* (citing *Maddox v. Love*, 655 F.3d 709, 7022 (7th Cir. 2011)). Perhaps the grievance policy could be better written or more clear, but the Court does not view the policy as so opaque that an inmate could not understand or comply with it. *Ridley*, 2026 WL 1534366, at *2 ("Even were the process ambiguous, the PLRA directs that 'the inmate should err on the side of exhaustion.'") (quoting *Ross*, 578 U.S. at 644).

In lieu of any documentary evidence opposing summary judgment, Hunter submitted a sworn and signed statement that he filed an emergency grievance and followed up with a written notice as part of his response to Defendants' motion. *See* ECF 25. Specifically, Hunter states that when he did not receive a response to his emergency grievance, he "submitted a notice of non-response to the grievance specialist via request slip" which he gave to a case worker named "Ms. B" a week later and received no response. *Id.* at ¶¶ 32-38. He did not retain a copy of his supposed written notification he gave to "Ms. B" and therefore has failed to create a material issue of disputed fact on the exhaustion issue.

While statements based on personal knowledge made in a signed pleading, such as Hunter's response to Defendants' Statement of Material Facts, can be considered at the summary judgment stage, *see e.g., Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003), they do not always create a disputed issue of material fact merely because the nonmoving party disputes some issue based on his personal knowledge.

Again, as explained in the declaration of Grievance Specialist Joshua Wallen, "if an incarcerated individual does not receipt a receipt, grievance response, or a Return of Grievance for their emergency grievance, it is their responsibility to notify … the Offender Grievance Specialist, of that fact and maintain a copy of that notice.," ECF 20-1 at ¶ 25. Thus, Hunter's lack of written proof showing that any grievance was filed or that he submitted written notice of his lack of response demonstrates he did not follow the required processes regardless of what he swears to. When faced with nothing but a prisoner's say so and complete absence of supporting documentary evidence, courts

will grant summary judgment in favor of defendants for failure to exhaust. *E.g.*, *Attaway v. Illinois Dep't of Corr.*, No. 23-CV-2091-DWD, 2024 WL 4527714, at *3 (S.D. Ill. Oct. 18, 2024) (granting summary judgment for failure to exhaust when only evidence that plaintiff submitted a grievance were his sworn statements that he had done so without any documentation); *Dagans v. Cecil*, 2024 WL 3830275 at * 4-5, n. 3-4 (S.D. Ill. Aug. 15, 2024) (collecting similar cases). This does not rise to the level of "swearing contest" that can only be resolved with an evidentiary hearing. *Cf. Burns*, -- F.4th --, 2026 WL 2409723, at *5.

Finally, Hunter attaches a copy of the Law Library Photocopier Policy Statement which states that only legal (as opposed to grievance-related) materials can be copied *in the law library*. ECF 24-2 at 5. Presumably this is intended to show that he was unable to make a copy of his own grievances or subsequent written notices. But it is difficult to see how this is relevant when, as explained in reply by Defendants, there are other photocopiers available to inmates which they can use to make copies of non-legal materials (in other words, grievance-related materials). ECF 26 at 4-5. Hunter's reliance on the Law Library Photocopier Policy Statement (which postdates the filing of this lawsuit and is thus of little relevance) therefore does not create a genuine issue of material fact on the exhaustion issue.

In sum, the undisputed facts show that Plaintiff did not follow the required processes relating to his grievance, and he failed to exhaustive his administrative remedies prior to filing this lawsuit. Defendants are thus entitled to summary judgment. Accordingly, Defendants' Motion for Summary Judgment (ECF 20) is

**GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and close this case.

SO ORDERED on 29th day of September 2026.

s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT